**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DUSTI THOMPSON, Individually,** | § | |
| **On Behalf of the Estate of Scott** | § | |
| **Thompson, Deceased, and on behalf of** | § | |
| **All Wrongful Death Beneficiaries** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | **CIVIL ACTION NO. _____** |
| **vs.** | § | |
| | § | |
| **WING ENTERPRISES, INC., d/b/a** | § | |
| **LITTLE GIANT LADDERS, and** | § | |
| **HAROLD ARTHUR WING** | § | |
| **Defendants** | § | **JURY DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Dusti Thompson, Individually, on Behalf of the Estate of Scott Thompson, Deceased, and on behalf of all wrongful death beneficiaries, files this Original Complaint against Defendant Wing Enterprises, Inc. and Harold Arthur Wing (collectively "Wing" or "Defendants"), and would respectfully show the Court as follows:

### I.    Parties and Service

1.1.    Plaintiff Dusti Thompson is a resident of Dallas County, Texas.

1.2.    Defendant Wing Enterprises, Inc. ("Wing") is a Utah corporation with its principal place of business in Springville, Utah. Wing does business as "Little Giant Ladders," which is an assumed name registered with the Utah Department of Commerce. Wing can be served through its registered agent for service or process, Art Wing, at 1198 N. Spring Creek Place, Springville, Utah 84663.

1.3.    Defendant Harold Arthur Wing is an individual who may be served at 1198 N. Spring Creek Place, Springville, Utah 84663, or wherever else he may be found. This defendant is

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                    1

identified on documents filed with the Utah Department of Commerce as one of the registered principals of Little Giant Ladders. For purposes of this complaint, all references to "Wing" include this defendant.

## II.    Jurisdiction and Venue

2.1.    The damages alleged in this action are in excess of $75,000 and the plaintiff and defendants are citizens of different states. As a result, this Court has subject matter jurisdiction over this matter pursuant to 28. U.S.C. § 1332(a).

2.2.    At all times relevant hereto, Defendants engaged in the distribution and sale of products in the State of Texas, directly marketed and sold the defective ladder to the plaintiff in Texas, and conducted business in the State of Texas within the meaning of the Texas Long Arm Statute set out in Texas Civil Practice and Remedies Code Sections 17.041, *et. seq*. Accordingly, this Court has personal jurisdiction over Defendants under the Texas Long Arm Statute. The exercise of personal jurisdiction over the Defendants in this case also complies with the Due Process Clause of the Fourteenth Amendment.

2.3.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## III.    Facts

**A.    Wing represents to consumers that its ladders are the safest and most versatile in the world, and that nothing is more important to it than the safety of its product users.**

3.1.    Wing designs, manufactures, and sells a line of multi-purpose ladders marketed as the "Little Giant Ladder System." It sells Little Giant Ladders through various retailers. Wing also sells its products directly to consumers through its websites, www.littlegiantladder.com and www.littlegiantladders.com, and through an aggressive television and internet marketing campaign.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                        2

3.2.    Among other things, Wing expressly represents to consumers that its ladders are "the strongest, safest, and most versatile…in the world." It represents that its "professional grade, multi-use ladder system can be set up in 24 different positions and is probably the most famous ladder in the world." Wing markets its ladders to "both the do-it-yourselfers and professionals," and claims it designs, manufactures and sells "the best ladder in the world."

3.3.    Wing also represents to consumers that it operates under the "guiding principle that every rung, every rivet, and every weld matters because every person matters." According to Wing, "this principle is the reason Little Giant continues to innovate and improve climbing equipment today."

3.4.    Wing also expressly represents to consumers that it is "in the business to prevent injuries and save lives." It touts itself as "the safety and innovation leader in climbing systems and professional access equipment." It represents to consumers that it has partnered "with safety professionals all over the country to develop real solutions to real safety problems."

3.5.    Wing expressly and impliedly represents to consumers, among other things, that nothing is more important to it than the safety of its' product users, and that every decision it makes with respect to the design, manufacture, and sale of its products is driven by one goal: to ensure the safety and well-being of the users of its products.

**B.     In reliance upon Wing's representations as to the safety and versatility of its products, the Thompsons purchase a Little Giant Ladder.**

3.6.    Dusti and Scott Thompson were soulmates. In addition to being husband and wife, they were also business partners. Together, Dusti and Scott built D&S Construction from the ground up. Among other things, D&S Construction was hired by property preservation companies to conduct home repair and improvements on foreclosed houses prior to relisting them for sale. Another facet of their home-grown business involved the installation and removal Christmas lights

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                 3

for customers during the holiday season. As a result, Scott had substantial experience with ladders and was just the type of seasoned, professional ladder user Wing targeted as a potential customer.

3.7.     The Thompsons were watching television one evening and saw an advertisement from Wing making material representations regarding the safety and versatility of its Little Giant Ladder Systems. Scott was always a very cautious and safety-conscious ladder user, and Wing's material representations caught his attention, including in particular its express representations that Wing's ladders were made of the highest quality, and that Wing put consumer safety above all else. After reviewing Wing's website and the material representations made thereon, the Thompsons ordered a 22-foot multi-purpose ladder (Part Number 2322-801, Model Number 22) ("Ladder") in November 2017. Wing shipped the Ladder to the Thompsons' residence in Kaufman County, Texas.

3.8.     When the Ladder the Thompsons purchased is extended to increase the length, two locking pins referred to by Defendants as "Rock Locks" are located at the top of each segment. The pins fit inside holes in the rungs on the central two pivoting ladder segments and are put into, or out of, the holes by pivoting the plastic Rock Lock handles on the sides of the extension ladder segments. However, it is impossible to see if the pin inserts into the female holes in the rungs in the central two pivoting ladder segments. The structure of the outer extension segments and the Rock Lock components completely cover up the pins and their insertion into the female holes in the central ladder segments. As a result, users like the Thompsons had no way to know if the pins were inserted properly into the holes. The pins ride in sheet metal cylinders that are held in place by cast aluminum brackets, thus making it impossible for a user to know if a pending product failure is about to happen.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                            4

**C.     Unbeknownst to the Thompsons, Wing was aware of substantial defects with the Ladder. Despite its knowledge, Wing makes the intentional decision not to recall the Ladder or otherwise warn the Thompsons of its unreasonably dangerous condition.**

3.1.    Unbeknownst to the Thompsons, Wing's express and implied representations regarding the safety of its products and its concern for user safety was a charade. On March 23, 2017, approximately eight months <u>before</u> the Thompsons purchased their Ladder, the United States Consumer Product Safety Commission ("CPSC") issued a recall on approximately 37,000 Little Giant Ladders. The CPSC determined that the "multipurpose ladder's locking pins/rung fasteners can fail, posing a fall hazard to consumers on the ladder." The CPSC warned that "[c]onsumers should immediately stop using recalled ladders and contact Wing Enterprises for a free repair kit."

3.2.    According to the information provided by Wing, its multipurpose ladders were manufactured with two different types of Rock Locks, Type A and Type B. On information and belief, based upon the following pictures from Wing's website at https://littlegiantladders.com/rocklockrecall/, a primary difference between the two is that the Type A Rock Lock has a cast aluminum bracket that is attached to the central ladder segment:



Cast Aluminum Bracket

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                          5

The Type B Rock Lock does not have the cast aluminum bracket:



3.3.    Wing warranted to consumers that this additional metal ring rendered ladders with the Type A Rock Lock safe: "[i]f your Rock Locks are Type A, **you can disregard this notice, your ladder is safe to operate**." With respect to the Type B Rock Locks, Wing acknowledged that the "Rock Lock pins on the outer sections may disengage, causing the inner section to telescope upwards." Wing informed consumers whose ladders contained Type B Rock Locks to "IMMEDIATELY STOP USING YOUR MULTIPURPOSE LADDER AND CONTACT WING ENTERPRISES".

3.4.    In reality, Ladders with the Type A Rock Lock were even more defective than those with the Type B Rock Lock. On information and belief, the Type A Rock Lock has the very same defect that the Type B Rock lock such that, in both designs, the locking pins had minimal penetration into the central ladder segments, and were capable of having no penetration at all.

3.5.    To make matters worse, the Type A Rock Lock contained additional defects with respect to the cast aluminum brackets. First, the brackets were far too small in size, making them unable to withstand the load placed on them during normal usage. Second, they were made of poor

quality material, compounding the danger created by the fact that they were undersized, and they were attached to the ladder in a way that exacerbated their already compromised design.

3.6.    On information and belief based upon publicly available records, Wing also misrepresented the seriousness of the problems that led to the CPSC recall of ladders with the Type B Rock Lock. Wing claimed the recall was the result of it having received "two reports of locking pins/rung fasteners failing," and that despite the failure "no injuries have been reported." On the contrary, by the time of the recall Wing had been aware of numerous injuries arising out of defects in its ladders.

3.7.    Moreover, on information and belief, Wing did not engage in the level of inspection in which it represented to consumers that it did. Among other things, despite representing that it engaged in a detailed inspection of "every rung, every rivet, and every weld," Wing's actual testing and inspection process, if any, was minimal.  Upon information and belief, the welds used to hold the support braces on the ladder segments was so substandard that they did not even penetrate the substrate, which allowed the support braces to fail when they were needed most.  The most basic of post-manufacture inspection techniques would have revealed these sub-standard welds.

3.8.    In addition, on information and belief, Wing was well aware of the defective nature of the ladders with Type A Rock Locks but made a conscious decision not to recall ladders with those mechanisms in order to avoid the substantial cost of recalling and replacing ladders with that type of locking system. Instead, Wing quietly changed the design on new ladders, without recalling or repairing ladders with the old design—and without warning consumers of the dangers inherent in ladders with Type A Rock Locks.  Today, the serious defects that existed in the Type A and Type B Rock Lock ladders appear to have been rectified by a much more robust and completely redesigned Rock Lock fastener.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                7

3.9.    In addition to hiding material defects in the Ladder, Wing also wholly failed to warn consumers, including the Thompsons, and continues to fail to warn as to when a Ladder should be removed from service or what specific conditions should alert the consumer that it should no longer be used.

3.10.    At the time the Thompsons purchased their Ladder, Wing did not provide any warnings or instructions as to how long the Ladder would be safe for use. Nor did Wing provide any warnings, instructions or guidance of any kind whatsoever as to how to inspect the ladder or on what schedule it should be inspected.  Wing also failed to alert the consumer as to when a ladder was too damaged, bent or broken to be safely used.   The same complete lack of warning or instruction is still true today.

3.11.    Even if it had, any such warnings or instructions would have been inconsequential, as ladder failures due to the types of defects Wing hid from the public were not at all related to ladders having been used in a damaged, bent or broken condition.   Prior to the sudden and unexpected product failure, the Thompsons had used the ladder on an almost daily basis without any incident or malfunction.

**D.     Unaware of the extreme danger that Wing had failed to protect against, Scott Thompson uses the Ladder to remove Christmas lights. The Ladder fails during use, causing Scott to fall face-first onto a concrete driveway while Dusti watches helplessly. Scott dies from his injuries five days later.**

3.12.    On December 29, 2019, Dusti and Scott Thompson were working in Dallas County, Texas removing Christmas lights at the home of one of their customers located at 6929 Rocky Top Circle, Dallas, TX 75252. The removal required Scott to utilize the Ladder to reach lights along the roof line. Scott extended the ladder to its maximum length and set it up against the house, ensuring that the feet were firmly planted on dry and level ground approximately seven feet from the house.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                                          8

3.13.    Scott climbed the ladder and was standing completely within the rails taking lights off the roof when the top segment of the ladder suddenly and unexpectedly separated from the remaining three segments. Dusti, who was removing lights from a nearby tree, saw the extension fly through the air and watched helplessly as Scott fell face-first on to the concrete driveway. Dusti ran to Scott, pulled the ladder off him and rolled him over.  She leaned the ladder up against the house to get it out of the way and then ran to the front door, banged on it until the homeowner came out and asked her to call 911.  She immediately then went to hold Scott and noticed that he was bleeding from the mouth and convulsing uncontrollably.  At that time, Scott was conscious and in extreme pain.

3.14.    Scott was taken to the hospital, where he was diagnosed with substantial injuries. Over the next five days, Scott fought for his life. Sadly, on January 3, 2020, Scott lost his fight as Dusty was forced to make the heart-wrenching decision to her soulmate s from life support. At the time of his death, Scott was just 49 years old.

### IV.    Causes of Action

**Survival Action**

4.1.    Plaintiff Dusti Thompson is the spouse, heir, and representative of the Estate of Scott Thompson.  Plaintiff Dusti Thompson is entitled to bring this survival action pursuant to Texas Civil Practice & Remedies Code Section 70.21. Plaintiff brings the following survival claims and causes of action against Defendants as stated herein. Defendants' respective tortious acts and omissions were the sole producing and proximate causes of the severe physical and mental injuries Scott Thompson sustained prior to his death. Prior to his death, Scott Thompson had viable personal injury claims and causes of action against the Defendants. Had he survived, Scott

Thompson would have been entitled to bring an action for the personal injuries he sustained in the incident made the basis of this lawsuit.

4.2.    Accordingly, Plaintiff as spouse, heir, and legal representative of the Estate of Scott Thompson, sues and makes survival claims including on behalf of said Estate against Defendants for Scott Thompson's medical expenses, paining and suffering, mental anguish, funeral expenses, exemplary damages, and all other damages and other amounts allowed by law.

**Wrongful Death Action**

5.1.    Plaintiff Dusti Thompson is the spouse of the deceased Scott Thompson and is entitled to bring this wrongful death action pursuant to Texas Civil Practice and Remedies Code Section 71.001, et. seq. Plaintiff brings the following wrongful death claims and causes of action against Defendants as stated herein. Defendants' respective tortious acts and omissions proximately caused Scott Thompson's severe physical and mental injuries and ultimately his death. Each of Defendants' tortious acts and omissions as described throughout this pleading constitutes a wrongful act and/or constitutes neglect, and/or carelessness, and/or unskillfulness, and/or default by each of the Defendants. Scott Thompson would have been able to bring an action against Defendants for his injuries, had he lived. Plaintiff sustained actual injuries as a result of the incident made the basis of this lawsuit.

5.2.    Accordingly, Plaintiff Dusti Thompson sues and makes claims against Defendants on behalf of herself and all other wrongful death beneficiaries for the wrongful death of Scott Thompson as stated herein and makes claims against Defendants for loss of services, loss of earnings, future support, advice, care and maintenance, mental anguish, loss of companionship and society, loss of consortium and all other damages and other amounts allowed by law.

**Count One: Strict Products Liability**

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                      10

6.1.    Plaintiff hereby incorporates the foregoing allegations by reference as if fully stated herein.

6.2.    Defendants are strictly liable to Plaintiff for designing, manufacturing, marketing and placing into the stream of commerce the Ladder that caused the damages for which Plaintiff seeks to recover. The Ladder was in the same condition at the time Scott Thompson was injured as it was when it was originally designed, manufactured, assembled, marketed and distributed by Defendants. At all such times, the Ladder was unreasonably dangerous for its reasonably foreseeable uses.

6.3.    At the time Defendants placed the Ladder into to the stream of commerce, the Ladder contained one or more design defects, including but not limited to:

- A defectively designed cast aluminum bracket such that it was too small in size;

- A defectively designed cast aluminum bracket  designed and manufactured with poor quality material;

- A defectively designed cast aluminum bracket such that it was fastened to the Ladder's frame in a defective and unsafe manner;

- A defectively designed Ladder locking mechanism such that the locking pin did not insert far enough into the central ladder segments; and

- A defectively designed Ladder Rock Lock system such that the proper engagement of the locking pin was hidden from view so that a prudent user of the product was incapable of independently confirming the Ladder was safe for use.

6.4.    In addition, on information and belief, at the time Defendants placed the Ladder into to the stream of commerce, the Ladder contained one or more manufacturing defects, including but not limited to defects in the manufacturing of the cast aluminum brackets.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                          11

6.5.    In addition, at the time Defendants placed the Ladder into to the stream of commerce, the Ladder contained one or more marketing defects, including but not limited to:

- A failure to warn and/or provide adequate warnings regarding the fact that the Ladder's locking mechanism had a propensity to fail;

- A failure to warn and/or provide adequate warnings regarding the fact that the locking pins did not insert far enough into the center ladder segments;

- A failure to warn and/or provide adequate warnings as to the poor quality of the material used in the cast aluminum brackets, and the fact that the brackets were too small;

- A failure to warn and/or provide adequate warnings regarding the fact that the cast aluminum brackets were not properly or adequately attached to the Ladder's frame;

- A failure to warn and or provide adequate warnings regarding the fact that, despite Wing's statement that "every rung, every rivet and every weld matters," Wing had no procedures, or had inadequate procedures, in place to inspect the Ladder prior to selling it to the Thompsons;

- A failure to provide instructions and/or warnings, or providing inadequate instructions and/or warnings, as to when the Ladder should be removed from service or at what condition it should no longer be used;

- A failure to provide instructions and/or warnings, or providing inadequate instructions and/or warnings, regarding at what point the Ladder should be considered too damaged, bent, or broken to be safely used;

- A failure to provide instructions and/or warnings or providing inadequate instructions and/or warnings regarding how to inspect the ladder or on what

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                    12

schedule it should be inspected to determine when the ladder should be removed from service; and

- A failure to instruct and/or warn the Thompsons that the Ladder Wing claimed was the "the strongest, safest and most versatile…in the world" would not last more than a few years despite normal usage.

6.6.    The unreasonably dangerous nature of the defects created a probability that the Ladder would fail under normal working conditions, resulting in severe and permanent injuries and death. The defective condition of the Ladder was the sole proximate and producing cause of the death of Scott Thompson, and of all the injuries and damages for which Plaintiff seeks to recover.

6.7.    A safer design existed at the time the Ladder was manufactured that would have prevented or significantly reduced the risk of Scott Thompson's injuries without substantially impairing the Ladder's utility. Moreover, a safer alternative design was economically and technologically feasible at the time the Ladder left the control of the Defendants by the application of existing and reasonably achievable scientific knowledge and design.

6.8.    The Ladder was defective and such defects were a direct producing and/or proximate cause of the injuries and damages for which Plaintiff seeks to recover. Plaintiff seeks all damages allowed by law.

**Count Two: Negligence**

7.1.    Plaintiff hereby incorporates the foregoing allegations by reference as if fully stated herein.

7.2.    Defendants owed a legal duty, among other things, to: (1) design, manufacture, and market the Ladder in a reasonable and prudent manner, (2) warn Plaintiff about the dangers

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                    13

inherent in the Ladder that were known or should have been known to Defendants and were not readily apparent to the Thompsons, and (3) inspect the Ladder for latent defects.

7.3.    Defendants were negligent by, among other things, allowing and/or creating a risk of harm to their consumers, including the Thompsons. This was a breach of the standard of care owed by Defendants and breach of Defendants' responsibility to provide reasonable care. Defendants' negligence includes, but is not limited to, the following:

a.  Improper design and/or manufacture of the Ladder so as to create an unreasonable and dangerous propensity to fail under normal and foreseeable circumstances and normal working conditions;

b.  Failure to provide reasonable and adequate warnings about the propensity of the Ladder to fail when used as intended, and about the design, manufacturing and/or marketing defects contained in the Ladder;

c.  Marketing the ladder in such a manner as to mislead consumers as to the safety and stability of the Ladder;

d.  Improper and inadequate inspection and/or testing of the Ladder and its component parts;

e.  Improper, inadequate or a complete failure to provide instructions and/or warnings or providing inadequate instructions and/or warnings regarding how to inspect the ladder or on what schedule it should be inspected to determine when the ladder should be removed from service;

f.  Improper assembly of the Ladder; and

g.  Improper transport and/or storage of the Ladder.

7.4.    Defendants' negligence was a proximate cause of all damages for which Plaintiff seeks recovery in this action.

**Count Three: Negligent Misrepresentation**

8.1.    Plaintiff hereby incorporates the foregoing allegations by reference as if fully stated herein.

8.2.    Defendants supplied plaintiff with material false information in the course of their business, profession, or employment, or in the course of a transaction in which Defendants have a pecuniary interest. Defendants supplied such false information for the guidance of the Thompsons in the transaction described herein. Specifically, Defendants supplied the Thompsons with false information regarding the safety and stability of the Ladder, and the steps Defendants took to ensure that the Ladder was safe for its intended or reasonably foreseeable use.

8.3.    Defendants failed to exercise reasonable care or competence in obtaining or communicating information regarding the safety and stability of the Ladder. The Thompsons suffered damages as set forth herein, which were proximately caused by their justifiable and detrimental reliance upon the information supplied by Defendants. Plaintiff seeks recovery of all damages allowed by law as a result of Defendants' negligent misrepresentations.

**Count Four: Misrepresentation**

9.1.    Plaintiff hereby incorporates the foregoing allegations by reference as if fully stated herein.

9.2.    Defendants represented to the public that the Ladder was safe and stable, and that they took reasonable steps to ensure that it was safe for its intended or reasonably foreseeable use. Defendants' representations involved material facts concerning the character and quality of the

Ladder. The Thompsons reasonably relied on the representations made by Defendants in purchasing the Ladder.

9.3.    The Thompsons suffered damages as set forth herein, which were proximately caused by their justifiable reliance on Defendants' misrepresentations. Plaintiff seeks recovery of all damages allowed by law as a result of Defendants' misrepresentations.

**Count Five: Breach of Warranty**

9.4.    Plaintiff hereby incorporates the foregoing allegations by reference as if fully stated herein.

9.5.    Defendants made one or more warranties to the Thompsons, including but not limited to:

- Warranting that the Ladder was free from defects;

- Warranting that the Ladder was merchantable;

- Warranting that the Ladder was fit for its particular and/or intended purpose;

- Warranting that the Type A Rock Locks were safe and did not need to be recalled; and

- Warranting that Defendants conducted rigorous testing and/or inspecting of the Ladder.

9.6.    Defendants breached one or more these warranties, and their breaches proximately caused damage to the Thompsons.

9.7.    As a result, Plaintiff seeks to recover all damages allowed by law as a result of Defendants' breaches.

**Count Six: Violations of the Texas Deceptive Trade Practices Act**

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                    16

10.1.    Plaintiff hereby incorporates the foregoing allegations by reference as if fully stated herein.

10.2.    Defendants are liable under the Texas Deceptive Trade Practices Act. Tex. Bus. & Comm. Code Sec. 17 et. seq.  The Thompsons were consumers as they sought to purchase goods, i.e., the Ladder. Defendants committed one or more of the following wrongful acts, including: (1) representing the Ladder had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities it does not have; (2) representing the Ladder was of a particular standard, quality, or grade, or that the Ladder was of a particular style or model when it was not; and (3) failing to disclose information about the Ladder that was known at the time of the transaction when the failure to disclose was intended to induce the consumers, the Thompsons, to enter a transaction that they would not have entered into if the information had been disclosed.

10.3.    Defendants also breached one or more warranties made to the Thompsons. Specifically, defendants made affirmative statements of fact and promises to the Thompsons and/or provided a description of the Ladder that became part of the basis of the bargain between Defendants and the Thompsons, thereby creating express warranties that the Ladder shall conform to the affirmations and promises made. Defendants breached the express warranties made to the Thompsons because the Ladder did not conform to the affirmations and promises Defendants made. As a direct and proximate result of the breaches, Scott Thompson sustained injuries and death, and Dusti Thompson also sustained injuries. Plaintiff seeks to recover all damages allowed by law as a result of Defendants' breach.

10.4.    Defendants also breached one or more implied warranties made to the Thompsons. The Thompsons had a unique purpose for buying the Ladder in that they intended to use it to conduct home repairs and improvements, as well as to hang and remove lighting for their

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                    17

customers. Defendants had reason to know of the Thompsons' particular purpose for purchasing the Ladder, and, in fact, directly marketed the Ladder to consumers such as the Thompsons and for the type of uses for which the Thompsons used the Ladder. Defendants breached the implied warranties they made to the Thompsons because the Ladder was defective and did not conform to the implied representations Defendants made, and it was not fit for the particular purpose for which the Thompsons purchased the Ladder.

10.5.    In addition, Defendants' numerous violations of the Texas Deceptive Trade Practices Act were committed knowingly and intentionally. As a result of Defendants' violations of the Texas Deceptive Trade Practices, Plaintiff seeks to recover all damages allowed by law, including but not limited to economic damages, mental anguish, treble damages, attorney's fees and court costs.

**Count Seven: Bystander Damages**

10.6.    Plaintiff hereby incorporates the foregoing allegations by reference as if fully stated herein.

10.7.    Dusti Thompson was present at the scene of the accident and held her soulmate in her arms as he was bleeding from the mouth and convulsing uncontrollably.

10.8.    Dusti Thompson suffered shock and extreme mental anguish and emotional distress as a result of perceiving the accident as it happened and/or immediately afterward.

10.9.    Dusti Thompson was Scott Thompsons, wife and soulmate.

10.10.    As a result, Dusti Thompson is allowed to recover all bystander damages as allowed by law.

**Count Seven: Exemplary Damages**

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                      18

11.1.    Plaintiff hereby incorporates the foregoing allegations by reference as if fully stated herein.

11.2.    Defendants committed one or more acts and/or omissions which, when viewed objectively from their standpoint at the time of their occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and of which they had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including but not limited to:

- Selling the Ladder to the Thompsons even though they knew the Ladder contained design, manufacturing, and/or marketing defects;

- Intentionally refusing to recall the Ladder even though they knew the Ladder suffered from the same, or substantially similar, defects as those ladders that were recalled;

- Representing to the Thompsons that the Ladder was subjected to a rigorous testing and inspection protocol when, on information and belief, Defendants knew the Ladder did not undergo any such testing or inspection;

- Intentionally designing and manufacturing the Ladder with substandard material even though they intentionally represented to the Thompsons that the Ladder was made of superior quality;

- Intentionally misrepresenting and/or concealing the number of incidents and injuries due to the failure of its ladders.

11.3.    The harm for which Plaintiff seeks recovery resulted from Defendants' fraud, malice, and/or gross negligence. Plaintiff is therefore entitled to exemplary damages pursuant to Chapter 41 of the Texas Civil Practice & Remedies Code.

11.4.    All of the acts and or omissions identified herein, at a minimum, (a) involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, when viewed objectively from Defendants' standpoint; and (b) of which Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.

11.5.    In addition, Plaintiff seeks the recovery of exemplary damages based upon conduct that was committed knowingly and/or intentionally and that is described as a felony under Section 32.46 of the Texas Penal Code. As a result, pursuant to Texas Civil Practice and Remedies Code Section 41.008(c)(11), the exemplary damages limitation set out in Texas Civil Practice and Remedies Code Section 41.008(b) does not apply.

## V.    Jury Demand

12.1    Plaintiff requests that a jury be convened to try the factual issues of this case.

## VI.    Damages and Prayer for Relief

13.1.    Plaintiff hereby incorporates the foregoing allegations by reference as if fully stated herein.

13.2.    As a result of Defendants' conduct as described herein, Plaintiff, individually, on behalf of the Estate of Scott Thompson, and on behalf of all wrongful death beneficiaries, seeks to recover the following damages:

      i.     Actual damages of any kind or nature to the fullest extent allowed by law;

      ii.     Exemplary and/or treble damages to the fullest extend allowed by law;

      iii.     Reasonable and necessary attorneys' fees and costs;

      iv.     Pre-judgment and Post-judgment interest to the fullest extent allowed by law; and

       v.       Such other relief to which they are justly or equitably entitled.

WHEREFORE, Plaintiff Dusti Thompson, Individually, on Behalf of the Estate of Scott Thompson, Deceased, and on behalf of all wrongful death beneficiaries, respectfully requests that this Court render judgment against the Defendants for any and all damages to which Plaintiff is entitled as set forth herein, including but not limited to actual damages, exemplary damages, attorney's fees and costs, pre-and post-judgment interest, and all other relief in law or equity to which she is entitled

Respectfully submitted,

_____

Ross Cunningham
State Bar No. 24007062
Joseph R. Alexander, Jr.
State Bar No. 00995150
Steven D. Sanfelippo
State Bar No. 24027827
CUNNINGHAM SWAIM, LLP
7557 Rambler Road, Suite 400
Dallas, Texas 75231
Telephone:    (214) 646-1495
Facsimile:     (214) 613-1163
rcunningham@cunninghamswaim.com
joe@cunninghamswaim.com
ssanfelippo@cunninghamswaim.com

***Attorneys for Plaintiff***

**PLAINTIFF'S ORIGINAL COMPLAINT**          21